DECISION
Plaintiff appeals the exception real market value of property identified as Account 00633906 (subject property) for the 2010-11 tax year. A trial was held in the Mediation Center in Salem, Oregon, on August 2, 2011. Richard A. Uffelman, Buckley Law, P.C., appeared on behalf of Plaintiff. Plaintiff and Wayne M. Richards (Richards), MAI, SRA, Certified General Real Property Appraiser, testified on behalf of Plaintiff. Matt Healy (Healy), Senior Appraiser, appeared and testified on behalf of Defendant. Plaintiff's Exhibit 1 was received without objection. Plaintiff offered two additional appraisal reports as exhibits. Healy objected because the two additional appraisal reports were not timely exchanged in accordance with Tax Court Rule-Magistrate Division (TCR-MD) 10. The Court excluded those exhibits because they were not "postmarked at least 14 days before the trial date or physically received at least 10 days before the trial date" as required by TCR-MD 10(C)(1). Defendant's Exhibit A was offered and received without objection.
 I. STATEMENT OF FACTS
Plaintiff testified that, in 2007, he and Aoki Takashi (Takashi) purchased the subject property, a 2.14 acre parcel improved with a 3,400 square foot, approximately, single-family dwelling for $615,000. Plaintiff testified that Takashi was a friend from Japan who wanted a big workshop and a place to stay while visiting the United States. Plaintiff testified that he and *Page 2 
Takashi built a 3,820 square foot garage with an additional 700 square foot attached guest quarters (outbuilding); it was completed in 2009. (Ptf s Ex 1 at 1; Def s Ex A-1.) The garage portion of the outbuilding has high ceilings of approximately 13 feet, concrete flooring, several large garage doors, lap siding, vinyl windows, metal roofing, and a large paved area in front. (Def s Ex A-1.) Plaintiff testified that the guest quarters portion of the outbuilding include a small kitchen area, full bathroom, bedroom, a small living room with a woodstove, and a sliding door that opens onto an eight foot-by-eight foot patio. (Ptf s Ex 1 at 18-19; Def s Ex A-1.) He testified that the kitchen has cherry cabinets, a granite tile counter top, and a stainless steel bar sink. Plaintiff testified that, when Takashi would visit, he would stay in the guest quarters portion of the outbuilding. He testified that the guest quarters are currently vacant, but that Takashi's son occasionally visits and stays there. The guest quarters cannot function as a rental unit because of the small sink and lack of cooking facilities. (Ptf s Ex 1 at 22.)
Plaintiff testified that the actual cost to build the shop was approximately $228,000. He testified that he and Takashi gave no consideration to likely return on their investment in the outbuilding. Plaintiff testified that he keeps several motorcycles and trucks in the outbuilding. Plaintiff testified that many other properties in his neighborhood include outbuildings; however, all are smaller and most are inferior in quality. Plaintiff testified that Takashi is recently deceased as of September 2009, and that Takashi's family inherited his one-third interest in joint tenancy. Plaintiff testified that he still owns a two-thirds interest in the subject property. Plaintiff testified that he had an agreement with Takashi that, upon the sale of the subject property, the value of the outbuilding would be paid to Takashi's estate.
Plaintiff testified that the subject property was appraised twice in 2009; a May 2009 appraisal for refinancing purposes concluded a value of $625,000, and a September 2009 *Page 3 
appraisal for the purpose of Takashi's estate concluded a value of $630,000. The 2010-11 real market value of the subject property set by the county board of property tax appeals (BOPTA) is $630,000, of which $152,484 is attributed to the land and $477,516 to the improvements.
A. Plaintiff's Value Evidence
Richards concluded that "the outbuilding is a significant over-improvement which will significantly and adversely affect the contributory value of the building." (Ptf's Ex 1 at 22.) He testified that he determined the "contributory value" of the outbuilding using a "residual analysis technique." Richards testified that he treated the real market value of $630,000 as "a known value" and sought to determine the value of the components, including land and "residential improvements." (Id. at 25.) He testified that he did not analyze the total real market value of $630,000 set by BOPTA because that was not his assignment. Richards testified that the remaining value, after subtracting the land and residential improvements, is the contributing value of the outbuilding. (Id.) To determine the value of the land "as-if vacant," Richards testified that he employed a sales comparison approach using five lots that, after adjustments, sold at a mean price of $163,385. (Id. at 25, 26.) He testified that he determined the contributory value of Plaintiff's land to be $160,000. (Id. at 30.)
Richards testified that, using the sales comparison approach, he identified six comparable sales by which to determine the contributory value of the residential improvements. (Id. at 31, 36, 37.) The sales occurred between March 2009, and April 2010, and involved properties located between 1.1 and 9.5 miles from the subject property. (Id. at 31.) Richards testified that two of his comparable sales included small outbuildings. He testified that sale 2 included a small garage and sale 4 included two detached buildings: a "detached stick built triple car garage" and an "older metal pole building" converted to an apartment with a garage. (Id. at 33.) Richards *Page 4 
determined the "contributory value" of the sale 2 outbuilding to be $15,000; he determined the "replacement cost new of the apartment/garage" of sale 4 to be $45,000 to $50,000. (Id.) Richards testified that sale 4 seemed to be below market. He testified that sale 2 was a short sale, so it represented the bottom of the market.
Richards made adjustments for variances in quality, condition, gross living area, parking amenities, the presence of specialty applications, fireplaces or other equipment, outbuildings or shops, and landscaping. (Id. at 29-30.) He testified that adjusted sales prices for residential improvements ranged from $94.87 to $151.98 per square foot, with a mean of $120.81. Richards testified that he determined a value of $120 per square foot, or $407,500, for the subject property residential improvements.
Richards' adjustments with respect to sale 1 contain a mathematical error; he determined that an adjustment of-$5,500 for market conditions was appropriate, but appears to have added $5,500 rather than subtracted $5,500. (Ptf's Ex 1 at 31.) Correction of the mathematical error with respect to sale 1 results in an adjusted sale price of the residential improvements of $364,400 or $106.15 per square foot. The revised mean price per square foot of residential improvements is $120.27. (Seeid.) There are also some discrepancies between the "gross living area" used by Richards and the "total" square feet reported by the regional multiple listing service (RMLS) with respect to sales 4, 5, and 6. (Id. at 31, 45, 46, 47.) Richards reports the gross living area of sale 4 to be 3,545 square feet, whereas RMLS states 4,270;[1] he reports the gross living area of sale 5 to be 3,854 square feet, whereas RMLS states 3,950; and he reports the gross living area of sale 6 to be 2,401 square feet, whereas RMLS states 2,705. (Id.) Neither party addressed those discrepancies. *Page 5 
Subtracting the contributory value of the land and residential improvements from the subject property's total real market value of $630,000, Richards concluded that the residual value of the outbuilding was $62,500. (Id. at 37.) Plaintiff contends that BOPTA established an incorrect 2010-11 exception value for the outbuilding and, consequently, an incorrect maximum assessed value for the subject property. Plaintiff asks the court to reduce the exception value to $50,000 and the maximum assessed value to $493,642.
B. Defendant's Value Evidence
Healy testified that he inspected the subject property in April 2011. He testified that he looked for sales of improved properties with similar outbuildings but did not find any. Healy testified that he found no market for the outbuilding itself; it could not be sold as a separate component. He testified that he considered the three approaches to property valuation and found the income approach inapplicable because the subject property is not an income-generating property. (See Def's Ex A-6.) Healy testified that he found the sales comparison approach to be unreliable because he found no sales of properties with similar outbuildings. (Id.) Healy testified that he determined that the cost approach was most appropriate because of the age and condition of the outbuilding, noting that, "[b]ecause cost and market value are usually most closely related when properties are new, the cost approach is most important in estimating the market value of new or relatively new construction." (Def's Ex A-6) (citing Appraisal Institute, The Appraisal of Real Estate 338 (11th ed 1997)). Additionally, "[t]he cost approach is used to estimate the market value of * * * specialty-purpose or specialty properties, and other properties that are not frequently exchanged in the market." (Id.)
Healy testified that he does not think that the outbuilding is an overimprovement. He testified that cost is not necessarily equal to value; however, here, cost is the best indicator of *Page 6 
value. Healy testified that his original cost approach is supported by the cost information provided by Plaintiff. He testified that he looked for market data but, finding none, concluded that there is no market for the outbuilding. Healy testified that outbuildings such as that at issue in this case are not entirely uncommon; he could think of at least two or so in the county. He testified, however, that he had no sales data involving those outbuildings.
Using the cost approach, Healy determined a value of $236,860 for the outbuilding as of January 1, 2010. (Def's Ex A-7, A-28; Ptf's Ex 1 at 22.) He testified that the total construction costs for the outbuilding reported by Plaintiff, $228,392.78, are supportive of his value conclusion under the cost approach. Richards testified that he reviewed the cost approach completed by Healy and concluded that it is not a complete cost approach. He testified that the cost approach cannot be applied to a component because that implies that there is a market for the component. Richards testified that cost without the context of the market is merely a "historical fact." Richards testified that he does not consider the cost approach relevant in this case because there is adequate market data.
 II. ANALYSIS
The issue before the court is the exception value of the subject property for the 2010-11 tax year. Pursuant to ORS 308.149(5)(a), [2]
"`[n]ew property or new improvements' means changes in the value of property as the result of: (A) [n]ew construction, reconstruction, major additional, remodeling, renovation or rehabilitation of property." The value of new property and new improvements is commonly referred to as "exception value" and is determined under ORS 308.153(2)(a), which states: "The value of new property or new improvements shall equal the real market value of the new property or new improvements reduced (but not below zero) by the *Page 7 
real market value of retirements from the property tax account." Exception value "must exclude factors such as changes in inflation, market demand, and construction codes." Magno v. Dept. of Rev.
(Magno), 19 OTR 51, 61 (2006) (citing Hoxie v. Dept. ofRev., 15 OTR 322, 326 (2001)). Exception value "is a term used to identify certain changes to property for the current tax year that result in additions to both [real market value] and [maximum assessed value], and an exception to the typical constitutional and statutory cap of three percent on annual increases to [maximum assessed value]." Banducci v. Douglas County Assessor, TC-MD No 090069C, WL 3706451 at *1 n 4 (Sept. 23, 2010) (citing Or Const, ArtXI, § 11(1)(b); ORS 308.146(1); ORS 308.146(3)) (emphasis in original).[3]
ORS 308.205(1) defines real market value as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(2) states that the real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" The three approaches of value that must be considered are: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. OAR 150-308.205-(A)(2)(a);Shah v. Washington County Assessor (Shah), TC-MD No 100188D WL 2651582 at *2 (July 7, 2011). Although all three approaches must be considered, all three approaches may not be applicable in a given case. OAR 150-308.205-(A)(2)(a); Shah, TC-MD No 100188D. The approach of valuation to be *Page 8 
used is a question of fact to be determined on the record. PacificPower and Light Co. v. Dept. of Rev., 286 Or 529, 533 (1979).
Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312 (1971). Plaintiffs "must establish by competent evidence what the appropriate value of the property was as of the assessment date in question."Woods v. Dept. of Rev. (Woods), 16 OTR 56, 59 (2002). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." Reed v. Dept. of Rev.
(Reed), 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.
A. Sales Comparison Approach
"Under the sales comparison approach, the value of a property is derived by `comparing the subject property with similar properties, called comparable sales.' That comparison is based on many factors, and adjustments are made for any differences between the comparable sales and the subject property so that the appraiser can derive a value for the subject property." Magno, 19 OTR at 58 (citations omitted). OAR 150-308.205(A)(2)(c) states that, "[i]n utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used." Thus, in order to determine the real market value of a property, "[t]he court looks for arm's length sale transactions of property similar in size, quality, age and location." Richardson v. Clackamas CountyAssessor, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003). The sales comparison approach is most useful in determining the subject property's value "where there are sufficient recent, reliable transactions to indicate *Page 9 
value patterns or trends in the market." Appraisal Institute, TheAppraisal of Real Estate 300 (13th ed 2008).
Richards testified that he considers the sales comparison approach the superior valuation approach in this case because it "reflects market reactions to what people are willing to pay and buyers are willing to sell for." Healy testified that he considers the sales comparison approach inapplicable here because of a lack of sales in the immediate and surrounding areas of properties with improvements similar to the outbuilding at issue in this case. However, Richards testified that he found sufficient market data on sales of comparable lands improved by a dwelling in order to determine the contributing value of each component and subtract such values from the total property real market value to arrive at the residual value of the outbuilding.
Richards's "residual analysis technique" is similar to the residual analysis used to value land. See Foster v. Multnomah CountyAssessor, TC-MD No 060081B WL 333238 at *2 (Jan. 31, 2007) (stating that one method of establishing land value is to "select comparable improved sales, make appropriate adjustments for differences, and deduct the proper sum for the improvements, leaving an indicated land residual value."). The residual analysis technique may also be used to determine the value of improvements. See, e.g., Elledge v. Multnomah CountyAssessor, TC-MD No 040465B, WL 120504 at *1 (Jan 04, 2005) (after concluding that the property's real market value was $650,000, the court subtracted the land's undisputed value of $148,000, leaving a residual value of $502,000 which was allocated to the improvements); see alsoChambers v. Lincoln County Assessor, TC-MD No 070161C WL 4224965 at *3 n 8 (Nov 19, 2007) (describing the use of such residual approach to value a manufactured home, whereby "an appraiser analyzes bare land sales to determine land values and then adjusts the sales of comparable improved properties * * * by subtracting the estimated land value[.]"). *Page 10 
This court has been cautious of residual analysis techniques because the "extra step [of removing components] opens the door for error."Prestwood v. Deschutes County Assessor, TC-MD No 090589C WL 672825 at *2 (Feb 26, 2010). "Like all residual approaches, its success depends upon a demonstration of the reliability of its components * * *. However, to be successful in litigation the prevailing party does not need to build an unassailable case. All that is necessary is that one party be found more persuasive than another." Babcock v. WashingtonCounty Assessor, TC-MD No 040239A WL 1982333 at *2 n 3 (Aug 25, 2004).
Richards determined a 2010-11 land value of $160,000 for the subject property based on comparable land sales. The 2010-11 land value determined by BOPTA is $152,484. Given that the land value is not at issue and that BOPTA determined a land value of $152,484, the court will rely on the 2010-11 land value of $152,484 determined by BOPTA.
Richards determined a residential improvements value of $120 per square foot, or $407,500 total, for the subject property. Five of the six comparable sales relied on by Richards to determine the contributory value of the residential improvements are arm's-length sales adjusted to be comparable to the subject property. Comparable 2 is as a short sale, a "nontypical market condition" that may only be used in a sales comparison approach if "market-based adjustments can be made for the nontypical market condition." OAR 150-308.205-(A)(2)(c). Nevertheless, the adjusted sale price of sale 2 is within the range of adjusted prices determined by Richards. Defendant did not challenge or otherwise rebut Richards' conclusions.
Based on the information provided from RMLS, Richards understated the gross living area of three of his six comparable sales, the effect of which was to overstate the range of adjusted sale prices in his analysis of the residential improvement value. The court finds that a value of $115 per square foot, or $390,540 total, is appropriate for the residential improvement. *Page 11 
The court finds that the indicated value of the outbuilding was $87,000 as of January 1, 2010, under Plaintiffs residual analysis technique.
B. Cost Approach
"`In the cost approach, the value of a property is derived by adding the estimated value of the land to the current cost of constructing a reproduction or replacement for the improvements and then subtracting the amount of depreciation * * * in the structure from all causes.'"Magno, 19 OTR at 55 (citations omitted). "The cost approach is `particularly useful in valuing new or nearly new improvements.'"Id. "The [cost] approach is especially persuasive when land value is well supported and the improvements are new or suffer only minor depreciation and, therefore, approximate the ideal improvement that is the highest and best use of the land as though vacant." The Appraisalof Real Estate at 382.
Healy testified that the cost approach was the best indicator of value in this case because the outbuilding was new as of January 1, 2010, and he could find no market data pertaining to sales of such buildings. Richards testified that the cost approach cannot be applied to a single component because it implies that the component has a market. Richards further argued against the use of the cost approach in this case because the outbuilding is an "over-improvement"; as a result, the cost of the outbuilding exceeds the value a buyer would be willing to pay. Plaintiff testified that the outbuilding was built without regard to its cost or the resulting value added to the subject property. Healy testified that he has encountered improvements that cost more to build than their market value, but disagreed that the outbuilding at issue in this appeal is an overimprovement. However, Healy testified that he could not find any comparable sales and he could think of only a few comparable outbuildings in the county. *Page 12 
Although the cost approach is typically a reliable measure of value for new improvements, it is less reliable when the property is an "overimprovement":
 "`An estimate obtained by the Cost Approach may not reflect entirely the prevailing economic or market conditions. The cost of an improvement cannot be recovered in the market if there is no need for the improvement, if the property is not put to its highest and best use, if the structure is an overimprovement or of poor design, or if rentals are reduced due to economic conditions.'"
West Side Lube, Inc. v. Washington County Assessor, TC-MD No 040417C, WL 2007216 at *4 (Aug 22, 2005) (citing MultnomahCounty v. Dept. of Rev., 4 OTR 383, 389-90 (1971)).
 "[A] property that has * * * too many expensive amenities for its location (known as an overimprovement) is out of balance. Appraisers must watch for imbalances in the market and within specific properties because they can cause the market to ascribe different prices to otherwise comparable properties. Overimprovements * * * can lead to functional obsolescence that may need to be accounted for in sales comparison, income capitalization, and cost approaches analyses, albeit differently in each approach."
The Appraisal of Real Estate at 299. The court is persuaded that the outbuilding is an overimprovement and, consequently, suffers from functional obsolescence. "Cost is not a good measure of value where there is significant economic and functional obsolescence[.]" Dept. ofRev. v. Grant Western Lumber Co., 15 OTR 258, 264 (2000). Defendant's cost approach does not include a deduction for functional obsolescence associated with the outbuilding. The court finds that Defendant's cost approach is not a reliable indicator of the value of the outbuilding.
 III. CONCLUSION
After carefully considering the testimony and evidence presented, the court finds that the exception value of the subject property for the 2010-11 tax year was $87,000. Now, therefore, *Page 13 
IT IS THE DECISION OF THIS COURT that, for the 2010-11 tax year, the exception real market value of property identified as Account 00633906 was $87,000.
Dated this ___ day of December 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor,1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Pro Tempore Allison R.Boomer on December 9, 2011. The Court filed and entered this documenton December 9, 2011.
[1] Richards states that sale 4 included a "600 [square foot] detached stick built triple car garage" and an "864 [square foot] metal pole building that was converted into a 576 [square foot] apartment and garage." (Ptf's Ex 1 at 33.)
[2] Unless otherwise noted, all references to the Oregon Revised Statues (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.
[3] In Oregon, real property is taxed on the lesser of the property's real market value or maximum assessed value. ORS 308.146(2); ORS 308.153(3). When a new improvement is added to property, the maximum assessed value is the sum of the maximum assessed value of the property as if it had not changed and the maximum assessed value of the new improvement. ORS 308.153(1). The maximum assessed value of the new improvement is the product of: the amount by which the real market value of the new improvement exceeds the real market value of any retirements; and the ratio of the average maximum assessed value for similar property in the area to the average real market value for similar property in the area. ORS 308.153(1)(b), (2)(a); ORS 308.149 (defining terms used in ORS 308.153(1)(b)).